862 P.2d 305

**TOLMIE FARMS, INC., an Idaho corporation; and Donald E. Tolmie and Connie H. Tolmie, husband and wife, Plaintiffs–Appellants,**

**v.**

**Stauffer Chemical Company, INC., and John Does One through John Does Ten, Defendants,**

**and**

**J.R. SIMPLOT COMPANY, INC., Defendant–Respondent.**

**No. 19172.**

Court of Appeals of Idaho.

June 17, 1992.

Eismann Law Office, Nampa, for plaintiffs-appellants. Richard B. Eismann argued.

P. Mark Thompson; David E. Spurling, Boise, for defendant-respondent. David E. Spurling argued.

### SUBSTITUTE OPINION

The Court's prior opinion dated April 7, 1992, is hereby withdrawn.

WALTERS, Chief Judge.

This case arises from damage to a potato crop allegedly caused by the failure of "Vapam," a soil fumigant, to control nematodes. On summary judgment, the district court dismissed the breach of warranty claims asserted by the farmer against the product seller. For the reasons explained below, we reverse the dismissal of the claims asserting breach of express warranty but we affirm the dismissal of claims relating to alleged breach of implied warranties. We also reverse an order of the district court dismissing parties from the litigation and we remand the case for further proceedings.

### Facts

Tolmie Farms, Inc., is a family owned and operated farming enterprise that grows potatoes in Wilder, Idaho. Potato farmers in that area customarily fumigate the planting soil in the autumn with a nematicide to prevent nematodes, a root-eating worm, from destroying the potatoes. Vapam is a nematicide manufactured by Stauffer Chemical Company (Stauffer) and sold by J.R. Simplot Company (Simplot). In the fall of 1982, 1983, and 1984 Tolmie Farms purchased Vapam from Simplot and applied the chemical to its fields in each of those years. Although the potato harvests in 1983 and 1984 were successful, the 1985 crop became infested with nematodes, causing severe damage to the harvest.

Tolmie Farms, Inc. and Donald and Connie Tolmie (hereinafter collectively referred to as Tolmie Farms) brought this action against Stauffer and Simplot, alleging breach of express written and oral warranties, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Simplot moved for summary judgment, contending there was no evidence to support the allegation that it had made any express warranties, and asserting that it had effectively disclaimed all implied warranties. Simplot also objected to Donald and Connie Tolmie's status as real parties in interest and sought to dismiss them from the case. The district court granted the motion, dis-

missing all of the claims against Simplot, and dismissing the Tolmies from the action.[1] This appeal followed.

## Issues Presented

In this appeal we are asked to address the following issues:

1. Did the district court err in ruling there was no genuine issue of material fact as to whether Simplot made any express oral[2] warranties?

2. Did the district court err in ruling Simplot had effectively disclaimed all implied warranties of merchantability and warranties of fitness for a particular purpose?

3. Did the district court err in dismissing Donald and Connie Tolmie as parties to the action?

## Standard of Review

■ On a motion for summary judgment we will review "the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991). Where, as here, a jury has been requested, the non-moving party also is entitled to the benefit of every reasonable inference that can be drawn from the evidentiary facts. *See Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982).

## Express Warranties

With this standard in mind, we examine the record to determine whether there is a genuine issue of material fact as to the existence of an express oral warranty. The complaint alleges the express warranty as follows:

The defendants represented to the plaintiffs that Vapam applied in the manner recommended and instructed by the defendants in the fall of 1984 would control nematodes on the potato crop grown in the year 1985, would increase the yield of the potatoes and would improve the quality of the potatoes.

Through the affidavits of its employees, Simplot categorically denied this allegation, and moved for summary judgment on the claim. Opposing the motion, Tolmie Farms submitted the affidavit of Donald Tolmie, describing various meetings in which he and Simplot employees discussed using alternative fumigants on the potato fields. According to the affidavit, Tolmie discussed Vapam in the fall of 1982 with Simplot employee Avery Sheets, and Sheets told him "that Vapam would control nematodes ... and would produce a better quality and higher yield of potatoes." Tolmie also asserts that he and his father subsequently met with Dennis Coon, Simplot's area unit manager, who told them that Vapam "controlled nematodes and other soil pests." The affidavit reflects that the same or substantially similar statements were repeated to Tolmie by Sheets in late 1983 and 1984, before and after each purchase of Vapam.

Simplot contends that this affidavit should be "disregarded" because it fails to comply with the requirements of I.R.C.P. 56(e) and because it directly contradicts Tolmie's previous deposition testimony. Simplot further asserts that the affidavit contains insufficient evidence to establish the alleged representations, and that in any case, such representations were legally insufficient to create a warranty. We address these issues in turn.

■ *1. Compliance with Rule 56(e).* Rule 56(e) provides, in part, that

Supporting and opposing affidavits shall be made on personal knowledge, shall set

---

1. On its own motion for summary judgment, Stauffer was granted a partial summary judgment. The court gave effect to the written warranty disclaimers but concluded there remained triable issues of fact with respect to the claim for breach of express warranty. Those rulings are not before us in this appeal which was certified under I.R.C.P. 54(b) for review of the Simplot judgment only.

2. Tolmie Farms does not challenge the court's dismissal of its claim for breach of written warranty.

forth such facts *as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .

(Emphasis added.) Simplot argues that the affidavit contains inadmissible hearsay and other statements lacking an adequate evidentiary foundation and therefore should not be considered. We note, however, that unless noncompliance of an affidavit with Rule 56(e) is brought to the lower court's attention by a proper objection and motion to strike, it is waived. *Camp v. Jiminez*, 107 Idaho 878, 881, 693 P.2d 1080, 1083 (Ct.App.1984). This principle applies to affidavits containing evidence that would not be admissible at trial as well as to affidavits that are defective in form. *Accord* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, § 2738, at 507–511 (1983); 6–Pt.2 MOORE'S FEDERAL PRACTICE ¶ 56.-22[1] (2d ed. 1988). No such objection or motion appears in the record here. Accordingly, we will not consider the issue on appeal. *Kinsela v. State, Department of Finance*, 117 Idaho 632, 790 P.2d 1388 (1990).

■ *2. Inconsistent statements.* Simplot also avers that Tolmie's affidavit statements, made in December, 1990, are "in direct conflict" with his earlier deposition testimony of December 1, 1989, and therefore cannot raise a *genuine* issue of material fact to defeat the motion for summary judgment. To support this argument, Simplot cites to portions of the deposition transcript in which Tolmie states he cannot recall any of the specific conversations during which Simplot employees made the alleged representations about Vapam. Evidently, Simplot has relied on the original deposition transcript, neglecting to acknowledge Donald Tolmie's "corrected answers" added to the transcript by the court reporter prior to Tolmie's signature on December 28, 1989. *See* I.R.C.P. 30(e).[3] By way of his corrected answers, Tolmie's deposition states that he met with Avery Sheets in the fall of 1982, 1983, and 1984, to discuss the benefits of using Vapam on the potato fields, and that Sheets specifically told him that, if properly applied, Vapam would control nematodes and increase the yield and quality of the potato harvest.

■ Furthermore, even if Donald Tolmie had not changed his answers, and his testimony at the time of his deposition was that he could not recall the specific conversations that had taken place five years earlier, it would nonetheless have been inappropriate to reject his subsequent affidavit statements identifying those conversations. Courts must take extreme care not to take *genuine* issues of fact from the jury. *See Wilson v. Westinghouse Electric Corp.*, 838 F.2d 286, 289 (8th Cir.1988); *see also Lowry v. Ireland Bank*, 116 Idaho 708, 779 P.2d 22 (Ct.App.1989) (a determination of credibility should not be made on summary judgment if credibility can be tested in court before the trier of fact). Thus, while we may agree that the purpose of summary judgment is served by a rule that prevents a party from creating sham issues by offering contradictory testimony,[4] we perceive no "contradiction" where

---

3. Idaho Rule of Civil Procedure 30(e), pertaining to depositions upon oral examination, provides, in part:

> When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him. . . . Any changes *in form or substance* which the witness desires to make *shall be entered upon the deposition* by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness. . . .

(Emphasis added.) Pursuant to this rule, the witness is allowed to make the corrections regardless of the adequacy of his reasons. However, where a witness changes his answers without adequate reasons, he may be subject to re-examination by the parties. See 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2118 (1970) (discussing identically worded federal rule, F.R.C.P. 30(e)). These new answers correct and effectively replace the earlier ones, although the original testimony remains part of the record. *Id.*

4. *See, e.g., Adelman–Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517 (7th Cir.1988) ("the purpose of summary judgment . . . is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony."); *Wilson v. Westinghouse Electric Co.*, 838 F.2d 286 (8th Cir.1988) ("Otherwise, any party could head off a summary judgment motion by supplanting

the witness asserts in his affidavit facts which, at the time of his earlier deposition, he specifically had asserted he could not recall. *See also Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir. 1991) (district court must determine that affidavit contradicting prior testimony is a "sham" before it determines that affidavit cannot be used to create an issue of fact precluding summary judgment).

■ *3. Sufficiency of evidence to show representations were made.* Referring to several paragraphs in Tolmie's affidavit which state that employee Sheets "concurred with," "agreed with" and "reiterated" previous representations made by the Stauffer employee, Simplot argues that Tolmie Farms has failed to sufficiently establish the alleged representations. In considering a motion for summary judgment, the court must look to the totality of the pleadings, affidavits, and depositions, not merely to portions of the record in isolation. *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986). We observe that throughout his affidavit and deposition, Donald Tolmie has repeatedly identified statements made by Sheets, namely, that Vapam, if used as directed, would control nematodes and increase the quality and quantity of potatoes. Moreover, Tolmie also sets forth in his affidavit those representations which Sheets is alleged to have "concurred with" and "reiterated." Construing all of this evidence against Simplot, and in favor of Tolmie Farms, as is appropriate on summary judgment, we find the evidence sufficient to establish the representations allegedly made by Simplot. We turn next to whether those representations are sufficient to create a warranty.

■ *4. Sufficiency of the representations to create a warranty.* The Uniform Commercial Code (U.C.C.) provides that an express warranty may be created "by any affirmation of fact or promise made by the seller to the buyer which relates to the

goods and becomes a basis of the bargain...." I.C. § 28–2–313(1). It further provides that "a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." I.C. § 28–2–313(2). Simplot contends that, as a matter of law, the representations allegedly made by its employees neither constituted affirmations of fact nor were they the basis of the parties' bargain. We disagree.

■ Although the affidavit contains some statements, which, if viewed alone, might appear to be no more than opinion or endorsement, it also refers to numerous conversations in which Simplot employees specifically told Tolmie Farms that Vapam, used as instructed, would control nematodes and improve the yield and quality of the potato harvest. These latter statements clearly could be viewed by a jury as constituting an "affirmation of fact which relates to the goods." Moreover, an affirmation of fact is *presumed* to become a basis of the bargain. *See* I.C. § 28–2–313 comments 6 and 8; *Jensen v. Seigel Mobile Homes Group*, 105 Idaho 189, 194, 668 P.2d 65, 70 (1983); *see also J.I. Case Credit Corp. v. Andreason*, 90 Idaho 12, 408 P.2d 165 (1965). However, if there is "clear proof" of some fact which took the affirmation out of the agreement, no express warranty will be found. *Jensen*, 105 Idaho at 195, 668 P.2d at 71. The issue normally presents a question of fact. I.C. § 28–2–313 comment 3; *see also* J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 9–4, at 333 (1980).

Simplot contends that Tolmie Farms' prior use of Vapam provided it with "knowledge" of the product such that would remove any affirmations of fact about the product from the agreement. However, the affirmations in this case were wholly consistent with Tolmie Farms' experience. The record before us suggests that Vapam's failure to control the nematodes was

---

previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment"); *see also Perma Research and Development Co. v. The Singer Company,*

410 F.2d 572 (2nd Cir.1969); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975).

a latent product defect unpredicted even by the product manufacturer. Upon this record, we fail to see how the farmer's prior use of the product in 1982 and 1983 would constitute "clear proof" that Tolmie Farms should have or could have known that Vapam applied in the fall of 1984 would utterly fail to control nematodes in the 1985 crop.

For the above reasons, we conclude that the record presents a genuine issue of material fact as to whether Simplot made the alleged express warranties. Accordingly, summary judgment on Tolmie Farms' claim for breach of express warranty is reversed.

### Implied Warranties

 Next, we consider whether the district court correctly dismissed Tolmie Farms' claims for breach of the statutory warranties of merchantability and fitness for a particular purpose. These warranties are implied as a matter of law and operate independently from any express warranty, unless they are effectively disclaimed. I.C. §§ 28–2–314, 28–2–315.

The record establishes that after each sale of Vapam to Tolmie Farms, Simplot sent an invoice containing the following language:

> Products listed hereon are sold AS IS, WITH ALL EXISTING FAULTS. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE PRODUCT LABEL and seller makes no warranty, express or implied, as to the MERCHANTABILITY of the product. The customer assumes all risk of loss or liability resulting from the use of the above-listed products.

Tolmie Farms does not dispute the sufficiency of this language to exclude implied warranties, nor does it argue that it received any inconsistent writing concerning the terms of the sale of Vapam. Rather, Tolmie Farms argues that because Simplot delivered these invoices *after* each sale of Vapam had been consummated, and after it had already applied Vapam to its fields, the disclaimers could not be viewed as ever becoming part of the parties' agreement and therefore were ineffective. Simplot contends that the written disclaimer had in fact become part of the parties' contract as a result of the parties' prior course of dealing. We agree with Simplot.

 The general rule is that a disclaimer presented after the sale is made is ineffective to exclude a warranty. *See* WHITE & SUMMERS, *supra,* § 12–5, at 445. However, the U.C.C. recognizes that certain circumstances are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that certain implied warranties are excluded. Accordingly, the U.C.C. provides that implied warranties can be effectively disclaimed by a "course of dealing." I.C. § 28–2–316(3)(c) and comment 6. A "course of dealing" is a "sequence of previous conduct between the parties" which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. I.C. § 28–2–208(1).[5] Hence, where parties engage in repeated sales transactions, a seller's otherwise inconspicuous or untimely disclaimer can become part of the parties' contract. *See* WHITE & SUMMERS, *supra,* § 12–7, at 456 n. 128 and accompanying text.

The record before us reveals that Tolmie Farms had been a credit customer of Simplot between the spring of 1981 and the fall of 1984, and had received numerous invoices from Simplot, including the Vapam invoices, containing the same disclaimer language. There is no evidence indicating Tolmie Farms ever objected to this disclaimer. Based on these undisputed facts, we conclude that the written disclaimer language became part of the parties' contract for the sale of Vapam in 1984, and effectively excluded all implied warranties. Accordingly,

---

**5.** Idaho Code § 28–2–316 is intended to protect buyers from unexpected and unbargained for language of a disclaimer by permitting the exclusion of implied warranties only by conspicu- ous language *or other circumstances which protect the buyer from surprise. See* I.C. § 28–2–316 comment 1.

we affirm the district court's order dismissing the breach of implied warranty claims.

### Real party in interest

Finally, we examine the district court's dismissal from the case of Donald and Connie Tolmie as parties. Idaho Rule of Civil Procedure 17(a) provides that, "Every action shall be prosecuted in the name of the real party in interest...." The purpose of this rule is to enable the defendant to present its defenses against the proper persons, to avoid subsequent suits, and to proceed to finality of judgment. *See* 6A WRIGHT, MILLER & KANE, *supra*, § 1541, at 324 (discussing identically worded federal rule, F.R.C.P. 17(a)). Thus, although the Rule is mandatory in character, it should be construed liberally to effectuate its purpose. *Id.; see also, e.g., Hill v. BASF Wyandotte Corp.*, 782 F.2d 1212, 1214 (4th Cir.1986) (in action by farmer against herbicide manufacturer, joinder of farmer's father and brother who owned part of the acreage was proper, since no unfair prejudice to the manufacturer resulted).

The record presented to the district court establishes that between the fall of 1982 and March, 1985, Donald, Connie, and Donald's parents operated the potato farm as equal shareholders of Tolmie Farms, Inc. In his affidavit, Donald Tolmie asserts that on March 1, 1985, he and Connie assumed the farming operations of Tolmie Farms, Inc., and that the assets of the corporation, including the claims set forth in this action, were transferred to them. He further states that he and Connie assumed the liabilities of the corporation and continued the farming operations for the remainder of the calendar year, 1985, in their own name. Tolmie's deposition testimony on this point, although somewhat ambiguous, is consistent. He testified that Tolmie Farms was an active corporation in the fall of 1984 and in the spring of 1985, but that the farm did not operate as a corporate entity in the fall of 1985—the year of the crop failure. Although Simplot complains of the dearth of any official documentation to support the alleged assignment of rights

to the Tolmies, such argument goes to the weight of the evidence and presents a genuine question of fact for the jury.

Obviously, the crop damaged in the fall of 1985 belonged either to Donald and Connie Tolmie, or to the corporation, but not to both. Yet it is not altogether evident at this stage of the proceedings which one of these parties in fact owns the right to seek damages for the loss. Furthermore, we perceive a possibility of serious prejudice to the Tolmies if they are prematurely dismissed from the case and subsequently it is determined that they, and not the corporation, have sustained the loss. However, we see no unfair prejudice resulting to either defendant by allowing the Tolmies to remain in the action, since the issues and facts presented would be the same in either situation. For these reasons, we reverse the district court order dismissing the Tolmies individually from the action. Although our decision technically applies only to the district court's rulings on Simplot's motion, we advise the court to reinstate the Tolmies as plaintiffs to all claims remaining in this action, and to preserve Stauffer's objection to their reinstatement for consideration in a future appeal.

### Conclusion

For the reasons explained above, we affirm the district court's dismissal of the express written warranty and implied warranty claims, reverse the remainder of the judgment and remand the case for further proceedings. Each party shall bear its own costs on appeal; no attorney fees are awarded.

SWANSTROM, J., and ROWETT, J., pro tem., concur.